**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**VENUS M. LITTLE,**

                                        **Plaintiff,**

        **vs.**                                        **5:14-cv-63**
                                                       **(MAD)**

**CAROLYN W. COLVIN,**

                                        **Defendant.**

_____

**APPEARANCES:**                        **OF COUNSEL:**

**OLINSKY LAW GROUP**                    **HOWARD D. OLINSKY, ESQ.**
300 South State Street
Suite 420
Syracuse, New York 13202
Attorneys for Plaintiff

**SOCIAL SECURITY ADMINISTRATION**       **LAUREN E. MYERS, ESQ.**
Office of Regional General Counsel
Region II
26 Federal Plaza - Room 3904
New York, New York 10278
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

        Plaintiff commenced this action on January 22, 2014, pursuant to 42 U.S.C. § 405(g) and

1383(c)(3), seeking review of a decision by the Commissioner of Social Security denying

Plaintiff's application for Social Security Disability ("SSD") Insurance benefits and Supplemental

Security Income ("SSI"). *See* Dkt. No. 1.

        On November 30, 2010, Plaintiff filed an application for SSD and SSI, alleging a

disability onset date of August 12, 2008. *See* Dkt. No. 9, Administrative Record ("T."); *see also*

Dkt. No. 1 at 1. The application was denied on July 5, 2011. T. at 15. Plaintiff then requested a

hearing and appeared with her counsel before Administrative Law Judge ("ALJ") John P. Ramos on September 13, 2012. *See id.* at 34-68. On October 30, 2012, ALJ Ramos issued a decision denying Plaintiff's application. *See id.* at 18-26. Plaintiff subsequently requested review by the Appeals Council and was denied such review on December 24, 2013, making the ALJ's decision the final decision of the Commissioner of Social Security. *See id.* at 1-7.

Presently before the Court are Plaintiff's motion to remand for further administrative proceedings, and Defendant's motion for judgment on the pleadings. *See* Dkt. Nos. 11, 12.

## II. BACKGROUND

Plaintiff was born on December 1, 1957, and was fifty four years old at the time of the hearings, held on September 13, 2012. T. at 35, 38. Before August 12, 2008, Plaintiff reported work as a head cook. *Id.* at 39. Plaintiff testified that her job as a cook required her to lift between twenty-to-fifty pounds, and to prepare for the job she received a year of special training. *Id.* at 42. She further testified that she has "suffered from neck [and shoulder] problems since 2008." *Id.*

Plaintiff was admitted to the hospital on October 29, 2009, where she presented to the emergency room with "flu-like symptoms. She had a three-day history of fevers, body aches, and prodrome consistent with influenza. She was admitted and started on antibiotics for pneumonia." *Id.* at 298. After Plaintiff experienced respiratory failure, she "remained in the intensive care unit for over one month." *Id.* at 312. Upon her recovery, Plaintiff was discharged on December 3, 2009. *Id.* at 312.

On February 19, 2010, Plaintiff presented to Dennis Noia, P.h.D. ("Dr. Noia") for a consultative psychiatric examination. *Id.* at 359-62. According to the medical source statement, Plaintiff was "capable of understanding and following simple instructions and directions. She

2

appears to be capable of performing simple and some complex tasks with supervision and independently." *Id.* at 360-61. The statement also notes that Plaintiff can manage a routine and maintain a schedule, learn new tasks, make appropriate decisions, and "appears to be able to relate to and interact moderately well with others." *Id.* at 362. However, "[s]he appears to be having some difficulty dealing with stress." *Id.* Finally, Dr. Noia noted that his examination is consistent with Plaintiff's allegations. *Id.*

On the same day, Plaintiff presented to Kalyani Ganesh, M.D. ("Dr. Ganesh") for a consultative examination. *Id.* 363-66. Dr. Ganesh's medical source statement notes that Plaintiff had "[n]o gross limitation noted to sitting, standing or walking. No limitation to the use of upper extremities except mild to moderate limitation to overhead activity." *Id.* at 366. Dr. Ganesh also noted Plaintiff's reported activities of daily living, stating that "[s]he can cook a couple of times a week, clean once a week, do laundry once a month, shower twice a week, and dress twice a week." *Id.* at 364. Although Plaintiff reported bilateral shoulder pain brought on by lifting and overhead activity, no limitation to Plaintiff's ability to lift and carry objects was noted, and Dr. Ganesh's report further stated that Plaintiff has full range of motion in her "shoulders, elbows, forearms, and wrists bilaterally." *Id.* at 363, 365.

After relocating from Syracuse to Tennessee, Plaintiff reported numbness, tingling, and stabbing pain in her shoulders on August 24, 2010. *Id.* at 414. On September 29, 2010, Plaintiff was diagnosed with cervical radiculopathy and referred to a pain clinic. *Id.* at 397. On October 8, 2010, Plaintiff underwent an MRI, which showed that she had "[d]egenerative changes most significantly affecting the C5-C6 level." *Id.* at 391.

On December 3, 2010, Plaintiff was diagnosed with "[m]ajor depressive disorder, recurrent, severe with psychotic features" by Laura Mathews ("Mathews"), a Licensed Clinical

Social Worker ("LCSW"). *Id.* at 422. Another LCSW, Jamie Green ("Green"), also worked with Plaintiff on at least two occasions. *Id.* at 424-25. A functional capacity assessment completed on December 14, 2010 found moderate limitations on Plaintiff's activities of daily living, interpersonal functioning, concentration, task performance and pace, and ability to adapt to change. *Id.* at 426-28. The assessment also determined that Plaintiff has a severe and persistent mental illness, and has a Global Assessment Function score of 50.[1] *Id.* at 428.

On February 19, 2011, Plaintiff presented to Theodore Schuman, M.D. ("Dr. Schuman") for "an all systems evaluation of allegations of rheumatoid arthritis, diabetes mellitus, hepatitis B, depression, [and] hepatitis C." *Id.* at 455; *see also id.* at 455-62. In his medical assessment, Dr. Schuman opined that Plaintiff could occasionally "lift and/or carry (including upward pulling) for up to 1/3 of an 8-hour workday a maximum of 10 pounds," and she could frequently "lift and/or carry from 1/3rd to 2/3rds of an 8-hour workday a maximum of less than 10 pounds." *Id.* at 461. Dr. Schuman further opined that Plaintiff could "stand and/or walk (with normal breaks) for a total of about 6-hours in an 8-hour workday," and could sit with no restrictions. *Id.* at 462.

On March 10, 2011, Frank Kupstas, P.h.D ("Dr. Kupstas") completed a psychiatric review of Plaintiff. *See id.* at 467-81. Dr. Kupstas found that Plaintiff had mild difficulty in maintaining social functioning, and moderate difficulty in maintaining concentration, persistence, or pace. *Id.* at 477. He gave great weight to the psychological evaluation performed by Dr. Noia, and did not give any weight to the diagnoses performed by Mathews on December 3, 2010, because a LCSW is a "non-acceptable source." *Id.* at 479.

---

[1] According to Plaintiff's brief, "a score of 41-50 indicates an individual has 'serious symptoms . . . [o]r any serious impairment in social, occupational, or school functioning (e.g. no friends, unable to keep a job).' *Diagnostic and Statistical Manual of Mental Disorders* ('DSM-IV-TR') 34 (4th ed. 2000)." Dkt. No. 11 at 9.

On March 31, 2011, Marvin H. Cohn, M.D. ("Dr. Cohn") determined Plaintiff's residual functional capacity ("RFC") based on the existing medical records. *See id.* at 481-90. He found that Plaintiff could occasionally lift or carry twenty pounds, could frequently lift or carry ten pounds, could stand or walk with normal breaks for about six hours in an eight-hour workday, and could sit with normal breaks for about six hours in an eight-hour workday. *Id.* at 482. Further, Dr. Cohn found that Plaintiff's "statements about her symptoms and functional limitations are partially credible [because] the severity alleged [is] not completely consistent with the objective findings from the evidence in file." *Id.* at 489. Consequently, Dr. Cohn opined that restrictions in the 2011 consultative examination by Dr. Schuman are not consistent with Dr. Schuman's own findings during that examination, specifically that Plaintiff "has a [history] of arthritic pain, but [Plaintiff] has full [range of motion] in all major weight bearing joints and is slightly limited with the usages of her hands." *Id.* at 487.

On June 29, 2011, Saul Juliao, M.D. ("Dr. Juliao") completed a second RFC assessment. *See id.* at 509-17. Similar to Dr. Cohn, Dr. Juliao found that Plaintiff could occasionally lift or carry twenty pounds, could frequently lift or carry ten pounds, could stand or walk with normal breaks for about six hours in an eight-hour workday, and could sit with normal breaks for about six hours in an eight-hour workday. *Id.* at 510. Dr. Juliao, like Dr. Cohn, opined that Plaintiff's "statements about her symptoms and functional limitations are partially credible [because] the severity alleged [is] not completely consistent with the objective findings from the evidence in file." *Id.* at 514. Finally, Dr. Juliao commented on Dr. Schuman's examination, stating that Dr. Schuman's "restrictions are not consistent with his own findings. [Plaintiff] has a history of arthritic pain, but [Plaintiff] has [f]ull [range of motion] in all major weight bearing joints." *Id.* at 515.

On March 21, 2012, Plaintiff presented for intake at Syracuse Community Health Center. *See id.* at 554-55. She was diagnosed with Anxiety and Depressive disorders, and Nicole DeFurio ("DeFurio"), a LCSW, stated that Plaintiff had a flat mood, was despondent, and had a tearful affect. *Id.* at 555. However, DeFurio also found that Plaintiff's "[e]ye contact and physical appearance were good. Plaintiff's insight and judgment were appropriate." *Id.*

## III. DISCUSSION

**A. Legal Standards**

*1. Five-step analysis*

For purposes of SSI, a person is disabled when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382(c)(3)(A). There is a five-step analysis for evaluating disability claims:

> "First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform."

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see also Rosa v. Callahan*, 168 F.3d 72, 77

(2d Cir. 1999) (citations omitted). The claimant bears the burden of proof on the first four steps, while the Social Security Administration bears the burden on the last step. *Id.*

In reviewing a final decision by the Commissioner under 42 U.S.C. § 405, the Court does not determine *de novo* whether a plaintiff is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Court must examine the Administrative Record to ascertain whether the correct legal standards were applied, and whether the decision is supported by substantial evidence. *See Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 500-01 (2d Cir. 1998). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health and Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### *2. Credibility determination*

"The ALJ has discretion to assess the credibility of a claimant's testimony regarding disabling pain and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." *Marcus v. Califano*, 615

F.2d 23, 27 (2d Cir. 1979).  The regulations set out a two-step process for assessing a claimant's

statements about pain and other limitations:

> At the first step, the ALJ must decide whether the claimant suffers
> from a medically determinable impairment that could reasonably be
> expected to produce the symptoms alleged. . . .  If the claimant does
> suffer from such an impairment, at the second step, the ALJ must
> consider "the extent to which [the claimant's] symptoms can
> reasonably be accepted as consistent with the objective medical
> evidence and other evidence" of record. . . .  The ALJ must consider
> "[s]tatements [the claimant] or others make about [his]
> impairment(s), [his] restrictions, [his] daily activities, [his] efforts
> to work, or any other relevant statements [he] makes to medical
> sources during the course of examination or treatment, or to [the
> agency] during interviews, on applications, in letters, and in
> testimony in [its] administrative proceedings."

*Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (quotations and citations omitted).

If a plaintiff's testimony concerning the intensity, persistence or functional limitations

associated with his impairments is not fully supported by clinical evidence, the ALJ must

consider additional factors in order to assess that testimony, including the following: (1) daily

activities; (2) location, duration, frequency, and intensity of any symptoms; (3) precipitating and

aggravating factors; (4) type, dosage, effectiveness and side effects of any medications taken; (5)

other treatment received; and (6) other measures taken to relieve symptoms.  20 C.F.R. §

416.929(c)(3)(i)-(vi).  The issue is not whether the clinical and objective findings are consistent

with an inability to perform all substantial activity, but whether the plaintiff's statements about the

intensity, persistence, or functionally limiting effects of his symptoms are consistent with the

objective medical and other evidence.  *See* SSR 96-7p, Policy Interpretation Ruling Titles II and

XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's

Statements, 1996 WL 374186, *2 (Soc. Sec. Admin. July 2, 1996).  One strong indication of

credibility of an individual's statements is their consistency, both internally and with other

information in the record. *Id.* at *5.

"After considering plaintiff's subjective testimony, the objective medical evidence, and any other factors deemed relevant, the ALJ may accept or reject claimant's subjective testimony." *Saxon v. Astrue*, 781 F. Supp. 2d 92, 105 (N.D.N.Y. 2011) (citing, *inter alia*, 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4)). An ALJ rejecting subjective testimony "'must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his decision is supported by substantial evidence.'" *Melchior v. Apfel*, 15 F. Supp. 2d 215, 219 (N.D.N.Y. 1998) (quoting *Brandon v. Bowen*, 666 F. Supp. 604, 608 (S.D.N.Y. 1987)). The Commissioner may discount a plaintiff's testimony to the extent that it is inconsistent with medical evidence, the lack of medical treatment, and her own activities during the relevant period. *See Howe-Andrews v. Astrue*, No. CV-05-4539, 2007 WL 1839891, *10 (E.D.N.Y. June 27, 2007). With regard to the sufficiency of credibility determinations, the Commissioner has stated that

> [i]t is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

SSR 96-7p, 1996 WL 374186, at *2.

**B.      The ALJ's Decision**

At the first step of the sequential analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 12, 2008, Plaintiff's alleged onset date. T. at 20. At step two, the ALJ concluded that Plaintiff had the following severe impairments: rheumatoid arthritis,

depression, and chronic obstructive pulmonary disease ("COPD"). *Id.* At the third step of the analysis, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* Then the ALJ found that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § § 404.1567(b) and 416.967(b) with the following limitations:

> [S]he retains the ability to grasp, hold and turn, raise and lower objects, but should avoid frequent overhead lifting with either arm; and should avoid frequent exposure to respiratory irritants or extremes of temperature. She retains the ability to understand and follow simple instructions and directions; perform simple tasks with supervision and independently; maintain attention/concentration for simple tasks; regularly attend to a routine and maintain a schedule; relate to and interact appropriately with others to the extent necessary to carry out simple tasks; and handle reasonable levels of simple, repetitive work-related stress in that she can make decisions directly related to the performance of simple tasks in a position with consistent job duties that does not require the claimant to supervise or manage the work of others.

*Id.* at 21-22. At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. *Id.* at 26. At the fifth and final step of the analysis, relying on the Medical-Vocational Guidelines set forth in 20 C.F.R. Part 404, Subpart P, Appendix 2, the ALJ concluded that jobs existed in significant numbers in the national economy that Plaintiff could perform. *Id.* Therefore, the ALJ made a determination that Plaintiff was not disabled, as defined by the Social Security Act. *Id.* at 27.

**C.     Analysis**

    ***1. The ALJ did not err by not requesting a treating physician medical source statement***

The opinion of a treating physician is not afforded controlling weight where the treating physician's opinion is contradicted by other substantial evidence in the record, such as the opinions of other medical experts. *See Williams v. Comm'r of Soc. Sec.*, 236 Fed. Appx. 641,

643-44 (2d Cir. 2007); *see also Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) (citing 20 C.F.R. § 404.1527(d)(2)). " Although the final responsibility for deciding issues relating to disability is reserved to the Commissioner, *see* 20 C.F.R. § 404.1527(e)(1), an ALJ must give controlling weight to a treating physician's opinion on the nature and severity of the claimant's impairment when the opinion is well-supported by medical findings and not inconsistent with other substantial evidence." *Martin v. Astrue*, 337 Fed. Appx. 87, 89 (2d Cir. 2009) (other citation omitted).

When an ALJ refuses to assign a treating physician's opinion controlling weight, he must consider a number of factors to determine the appropriate weight to assign, including: (i) the frequency of the examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion. *See* 20 C.F.R. § 404.1527(c).

Although the ALJ need not explicitly consider each of the factors listed in 20 C.F.R. § 404.1527(c), it must be clear from the ALJ's decision that a proper analysis was undertaken. *See Petrie v. Astrue*, 412 Fed. Appx. 401, 406 (2d Cir. 2011) ("[W]here 'the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability'") (quotation omitted); *Hudson v. Colvin*, No. 5:12-CV-0044, 2013 WL 1500199, *10 n.25 (N.D.N.Y. Mar. 21, 2013) ("While [the ALJ] could have discussed the factors listed in the regulations in more detail, this does not amount to reversible error because the rationale for his decision is clear and his

ultimate determination is supported by substantial evidence"), *report and recommendation adopted*, 2013 WL 1499956 (N.D.N.Y. Apr. 10, 2013). Failure "to provide good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand." *Sanders v. Comm'r of Soc. Sec.*, 506 Fed. Appx. 74, 77 (2d Cir. 2012) (citations omitted).

Plaintiff argues that the ALJ erred by failing to request a treating source statement. Dkt. No. 11 at 14. First, he cites a Northern District case for the proposition that the treating physician rule requires that an ALJ develop the record by "obtaining information from a claimant's treating physician." *Id.* at 15; *Boswell v. Astrue*, No. 09-CV-0533, 2010 WL 3825622, *4 (N.D.N.Y. Sept. 7, 2010). Plaintiff then cites a second Northern District case that puts "an affirmative obligation [on the ALJ] to make reasonable efforts to obtain from a claimant's treating physicians any necessary reports, including an assessment of his or her RFC." Dkt. No. 11 at 15; *Lawton v. Astrue*, No. 1:08-CV-0137, 2009 WL 2867905, *16 (N.D.N.Y. Sept. 2, 2009). The Court finds that neither of these cases are sufficiently similar to the current case to support Plaintiff's proposition.

In *Boswell*, "[t]he ALJ discounted [the treating physician's] opinions, in part, because he found the [treating physician's] sit, stand, and walk limitations to be unsupported by the record." *Boswell*, 2010 WL 3825622 at *4. Further, the ALJ made no attempt to obtain the treating physician's treatment notes, when "it is certainly possible, and even likely, that supporting evidence for [the treating physician's] sit, stand, and walk limitations would be found in his treatment notes." *Id.* Here, the ALJ did not discount a treating physician's opinion based on a lack of supporting evidence, because no treating physician opinion was included in the record. Further, the ALJ did contact Syracuse Community Health Center and requested "[a]ll records from [October 27, 2009] to present." T. at 558. This is sufficient to find that *Boswell* does not

support Plaintiff's proposition.

In *Lawton*, the administrative record before the ALJ "contain[ed] neither a physical RFC assessment nor a medical source statement pertaining to plaintiff's physical capabilities, let alone one from a treating source." *Lawton*, 2009 WL 2867905 at *16. Based on this "critical void[,]" the ALJ was required "to take measures to complete the record and fill the perceived gaps." *Id.* (citation omitted). As pointed out by Defendant, "the [current] record before the ALJ contained 19 medical exhibits and included Plaintiff's treatment notes through August 2012, only about one month before the hearing." Dkt. No. 12 at 9; *see also* T. at 525-57. Therefore, unlike in *Lawton*, there was no gap in the record before the ALJ that required him to take further action, especially considering that he had already contacted Syracuse Community Health Center and requested Plaintiff's records. T. at 558.

Defendant argues that the ALJ developed the record appropriately, and that he did not err by not requesting a treating source statement. Dkt. No. 12 at 8. Defendant cites *Pellam v. Astrue*, arguing that "where [a] consultative examiner's opinion largely supported ALJ's RFC assessment, and the record contained all treatment notes, [the] ALJ had no further obligation to supplement the record by acquiring a medical source statement from one of the treating physicians." *Id.* (citing *Pellam v. Astrue*, 508 Fed. Appx. 87, 89-90 (2d Cir. 2013)). In *Pellam*, the ALJ "had all of the treatment notes from Pellam's treating physicians." *Pellam*, 508 Fed. Appx. at 18. In the current case, it is not clear whether the ALJ considered treatment notes from Syracuse Community Health Center, because the ALJ does not reference these treatment notes in his decision. However, a review of the record reveals that the only person who diagnosed Plaintiff at Syracuse Community Health Center was Nicole DeFurio on March 31, 2012. T. at 596-97. This diagnosis only covered Plaintiff's mental state. *Id.*

Defendant also references *Tankisi v. Commissioner of Social Security*. Dkt. No. 12 at 8. According to *Tankisi*, a record is not incomplete due to the lack of a treating medical source statement. *Tankisi v. Comm'r of Soc. Sec.*, 521 Fed. Appx. 29, 33-34 (2d Cir. 2013). Further, remand is not required "when an ALJ fails in his duty to request opinions, particularly where, as here, the record contains sufficient evidence from which an ALJ can assess the petitioner's residual functional capacity." *Id.*

The record contains Syracuse Community Health Center records regarding Plaintiff, and the most recent records are from October 2, 2012. T. at 559. Given the numerous medical exhibits and treatment notes in the record that end less than a month before the ALJ rendered his decision, the Court finds that the record contains sufficient evidence from which the ALJ could assess Plaintiff's RFC. Therefore, as in *Tankisi*, the ALJ's failure to obtain an opinion from a treating physician at Syracuse Community Health Center does not require remand.

Based on the foregoing, the Court finds that the record contained sufficient evidence for the ALJ to assess Plaintiff's RFC.

### 2. The RFC is supported by substantial evidence

#### a. Physical medical opinion evidence

Plaintiff contends that the ALJ did not evaluate the medical opinion evidence based on "factors such as the examining relationship, whether the opinion comes from a specialist, whether the opinion is supported by medical signs and laboratory findings, and whether the opinion is consistent with the record as a whole." Dkt. No. 11 at 18. Specifically, Plaintiff points to Dr. Schuman's ten pound lifting restriction, and argues that Dr. Schuman's examining relationship with Plaintiff meant that more weight should have been given to the ten pound restriction. *Id.* Plaintiff also argues that as Dr. Ganesh's opinion contained no reference to a limitation on lifting.

*Id.* at 19.

Defendant argues that, as "the ALJ noted, [Dr. Ganesh's] opinion is consistent with a light range of work[,]" and therefore, "it is [] clear that the ALJ gave weight to Dr. Ganesh's opinion." Dkt. No. 12 at 10-11.  Defendant also asserts that "Dr. Schuman's opinion was generally consistent with [the ALJ's] RFC" and "the ALJ noted a 20 pound lifting restriction is more consistent with the other evidence." *Id.* at 11-12.  Finally, Defendant claims that the ALJ was justified "in not accepting Dr. Schuman's assessment that Plaintiff could lift only 10 pounds because the regulations allow the ALJ to give a medical opinion less weight where the opinion is not consistent with other evidence in the record." *Id.* at 12-13.

"State agency physicians are qualified as experts in the evaluation of medical issues in disability claims.  As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole." *Cobb v. Comm'r of Soc. Sec.*, No. 5:13-cv-591, 2014 WL 4437566, *6 (N.D.N.Y. Sept. 9, 2014) (quoting *Leach ex. Rel. Murray v. Barnhart,* No. 02 Civ. 3561, 2004 WL 99935, *9 (S.D.N.Y. Jan. 22, 2004)).  As Dr. Cohn's and Dr. Juliao's opinions "may constitute substantial evidence[,]" the ALJ may validly rely on them as long as their opinions are "consistent with the record as a whole." *Id.*  According to the ALJ, "only Dr. Schuman limit[ed] the claimant to less than 20 pounds."  T. at 24.  Therefore, the ALJ validly relied on evidence consistent with the record when he decided to give little weight to Dr. Schuman's ten pound lifting restriction. *See* 20 C.F.R. § 404.1527(c)(4); *see also* 20 C.F.R. § 416.927(c)(4).

The Court finds no merit in Plaintiff's argument regarding Dr. Ganesh.  Dr. Ganesh opined that Plaintiff had "[n]o limitation to the use of upper extremities except mild to moderate limitation to overhead activity."  T. at 366.  As Defendant correctly notes, Dr. Ganesh's opinion is

consistent with a light RFC, as the ALJ explained in his decision.  *Id.* at 24.

Finally, the Court finds that the ALJ followed the appropriate regulatory factors when affording weight to the medical source statements.  As Defendant correctly contends, the Court requires "no such slavish recitation of each and every factor where the ALJ's reasoning and adherence to the regulation are clear."  Dkt. No. 12 at 13 (quoting *Atwater v. Astrue*, 512 Fed. Appx. 67, 70 (2d Cir. 2013)).  The ALJ's decision indicates that the various medical opinions are indicative of a light work RFC, and he properly explained his decision to afford less weight to those statements that dictated a lower RFC.  T. at 24.

### b.  *Mental medical opinion evidence*

In support of her argument for remand, Plaintiff cites *Dutcher v. Comm'r of Soc. Sec.*, where the court found that the ALJ erred in stating "that she cannot accord the opinion of [two LCSW's] controlling weight because they are not acceptable medical sources, but she failed to properly explain the weight she did assign."  *Dutcher v. Comm'r of Soc. Sec.*, No. 3:13-CV-611, 2014 WL 2510557, *6 (N.D.N.Y. June 4, 2014).  The court in *Dutcher* ordered remand "so that the ALJ may render a decision regarding Plaintiff's RFC after properly evaluating all of the medical opinion evidence."  *Id.*

Defendant argues that the RFC determination is supported by substantial evidence, asserting that "the ALJ's decision is sufficiently specific to make clear to subsequent reviewers the weight given to the opinions and the reason for that weight."  Dkt. No. 12 at 9.  Defendant further argues that the Second Circuit has not required that all evidence be mentioned in detail, as long as "the evidence of record permits us to glean the rationale of an ALJ's decision."  *Id.* at 9-10 (citing *Cichocki v. Astrue*, 729 F.3d 172, 178 (2d Cir. 2013)).

On December 14, 2010, LCSWs Green and Mathews, after having met with Plaintiff,

indicated that Plaintiff had a current GAF of 50.[2]  *See* T. at 428.  On that form, however, LCSW

Green left blank the sections concerning Plaintiff's highest and lowest GAF within the last year,

and only indicated her current GAF.  *See id.*  The evaluations by LCSWs Green and Mathews

were made after the period at issue here.  Further, the records indicate that these assessments

related only to Plaintiff's current condition upon admission and follow up treatment and,

therefore, it was not error for the ALJ to not expressly discuss this evidence.  *See Vandermark v.*

*Colvin*, No. 3:13-cv-1467, 2015 WL 1097391, *5 (N.D.N.Y. Mar. 11, 2015) (finding that the ALJ

did not err by failing to discuss the opinions of a staff psychiatrist and a LCSW, since the

evaluations were made "after the period at issue" and did not provide an opinion as to the

plaintiff's condition during the relevant time frame).

     Additionally, the ALJ did mention Plaintiff's treatment at Centerstone, where she was

treated by LCSWs Green and Mathews.  The ALJ further took into consideration the LCSWs'

opinion that Plaintiff was experiencing "symptoms of sadness and isolation."  *See* T. at 479; *id.* at

23.  As the ALJ noted, Dr. Kupstas' psychiatric evaluation found that Plaintiff had no more than

---

[2] GAF refers to a person's overall level of functioning and is assessed using a scale that
provides ratings in ten ranges, with higher scores reflecting greater functioning. *See Diagnostic*
*and Statistical Manual of Mental Disorders* ("DSM–IV–TR") 27 (4th ed. Text Revision 2000).
The GAF scale was removed for the fifth edition of the DSM, which was published in 2013,
because of the GAF's "conceptual lack of clarity" and "questionable psychometrics in routine
practice." *Diagnostic and Statistical Manual of Mental Disorders* ("DSM–V–TR") 16 (5th ed.
2013).  In addition, before the DSM–V abandoned the GAF scale, the SSA declined to endorse
GAF scores for "use in the Social Security and SSI disability programs" because GAF scores
have no "direct correlation to the severity requirements in [the SSA's] mental disorders listings."
*Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury*, 65 Fed.
Reg. 50746–01, 50764–65, 2000 WL 1173632 (August 21, 2000); *see also Santiago v. Colvin*,
No. 12 Civ. 7052, 2014 WL 718424, *20 n.10 (S.D.N.Y. Feb. 25, 2014) (citation omitted) ("The
[SSA] Commissioner has made clear that the GAF scale does not have a direct correlation to the
severity requirements contained in the [regulations] that the ALJ considers [to determine whether
the claimant has a per se disability]"); *Corporan v. Colvin*, No. 12-CV-6704, 2015 WL 321832,
*12 n.9 (S.D.N.Y. Jan. 23, 2015) (citations omitted).

moderate limitations in concentration, persistence, or pace. *Id.* at 479. Further, Dr. Noia noted that Plaintiff had intact attention and concentration, but did express symptoms of depression. *See id.* at 361. Dr. Noia further expressed his belief that Plaintiff appeared capable of understanding and following simple instructions and directions, performing simple and some complex tasks with supervision and independently, maintaining attention and concentration for tasks, regularly attending to a routine and maintaining a schedule, learning new tasks, and making appropriate decisions. *See id.* at 23, 361-62. Dr. Noia indicated that Plaintiff could relate moderately well with others and had some difficulty dealing with stress. *See id.* at 23, 362. It is clear that substantial evidence supported the ALJ's decision and that it was not error to not address the opinions of LCSWs Green and Mathews in more detail.

Moreover, in *Dutcher*, the court found that remand was warranted for several reasons. First, the court noted that the ALJ incorrectly accorded "little weight" to the plaintiff's treating physician, having based this determination on a misapplication of the record. *See Dutcher*, 2014 WL 2510557, at *4. The court found that the determination as to the treating physician alone warranted remand. *See id.* Further, the court found that this error was compounded by the fact that the ALJ gave great weight to the opinion of a consulting physician, who treated the plaintiff only once, and was not a specialist in the relevant field, unlike the plaintiff's treating physician. *See id.* at *5. Unlike *Dutcher*, the ALJ's decision in the present matter does not include such compound errors that would warrant remand.

Accordingly, the Court agrees with Defendant that "where, as here, the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he mention every piece of evidence in detail." Dkt. No. 12 at 10 (citing *Cichoki v. Astrue*, 729 F.3d 172, 178 (2d Cir. 2013)). Based on the foregoing, the Court denies Plaintiff's motion for remand on this

ground.

### 3. *The ALJ properly considered Plaintiff's credibility*

Plaintiff correctly sets out that when the ALJ finds that a claimant's allegations concerning the intensity and persistence of symptoms are not credible, he must consider the factors enumerated in 20 C.F.R. § 416.929(c)(1)-(3). Dkt. No. 11 at 19. Plaintiff also asserts that "the ALJ's brief summarization of a few select findings, combined with a vague conclusory rejection of Plaintiff's assertions does not provide adequate explanation for his credibility finding." *Id.* at 20.

Defendant alleges that contrary to Plaintiff's assertion, the ALJ performed the required analysis. Dkt. No. 12 at 14. Specifically, Defendant claims that the ALJ discussed Plaintiff's daily activities, symptoms, medication, other treatment, and objective medical findings. *Id.* at 14-15.

While the ALJ did not consider all of the factors in a single paragraph, the decision shows that he evaluated all of the relevant characteristics under 20 C.F.R. § 416.929. The ALJ stated that Plaintiff has no restriction on her activities of daily living, noting that during the week she cooks, cleans, showers twice, dresses twice, and every month she does laundry. T. at 21. He also noted that Plaintiff "took a bus to the [February 2010] examination." *Id.* at 22. The ALJ then chronicled Plaintiff's subjective symptoms starting at her alleged onset of disability date. *Id.* at 22-25. The ALJ "acknowledge[d] that the claimant has been diagnosed with depression, and in the most recent treatment notes indicate[s] she has been prescribed Celexa." *Id.* at 24. Further, the ALJ noted that "the claimant received a steroid injection in November 2010 . . . [and] had tried multiple medications for pain and reported that none had helped." *Id.* at 23. Based on these factors and the objective medical evidence, the ALJ found that "while the claimant has

impairments that are reasonably expected to produce the type of pain or discomfort she alleges, her complaints suggest a greater severity of symptoms than can be shown by the objective medical evidence alone." *Id.* at 24-25.

Contrary to Plaintiff's assertion, the ALJ's decision makes clear that he considered the relevant factors under 20 C.F.R. § 416.929 when making his determination. His credibility determination was based on "the treatment records, the consultative examiner's evaluation, and the opinion of the state agency reviewer," and the ALJ found that these sources were "consistent with all credible record evidence." *Id.* at 26. Then, the ALJ determined that Plaintiff's "specific allegations are not credible when compared with the record." *Id.*

Based on the foregoing, the Court finds that the ALJ properly evaluated Plaintiff's credibility and followed the two-step process mandated by 20 C.F.R. § 416.929.

### 4. The ALJ's reliance on the Medical-Vocational Guidelines was proper

An ALJ may determine whether a plaintiff's mental impairments "significantly diminish" his or her work capacity by determining whether the plaintiff can meet the basic mental demands of competitive, remunerative, and unskilled work as stated in SSR 85–15. The ruling states that these basic demands include the ability, on a sustained basis, to "understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." *Id.* A substantial loss of the ability to meet any of these demands would severely limit the potential occupational base at any exertional level and would, thus, "significantly diminish" the plaintiff's work capacity. *See Sipe v. Astrue*, No. 5:09–cv–1353, 2012 WL 2571268, *8 (N.D.N.Y. July 3, 2012). Such a substantial loss would prohibit the use of the Grids and necessitate the use of a vocational expert to determine whether there would be any jobs left in the national economy that the plaintiff could

perform. *See id.*

Plaintiff argues that the ALJ's limitation of "simple tasks" and "consistent job duties" is not compatible with SSR 85-15. Dkt. No. 11 at 21. Plaintiff further argues that "a substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base[,]" and therefore the ALJ should have "obtained vocational expert testimony to determine the extent to which Plaintiff's non-exertional limitations erode the occupational base, and whether there are jobs that exist in the national economy which Plaintiff can perform." *Id.* at 22.

On the other hand, Defendant contends that, because "[t]he ALJ found that the additional limitations did not significantly erode the occupational base[] of unskilled sedentary work[,]" Plaintiff's non-exertional limitations do not preclude application of the Medical-Vocational Guidelines, specifically Medical-Vocational Rule 202.14. Dkt. No. 12 at 15-16. Further Defendant asserts that Plaintiff did not object to the remainder of the ALJ's non-exertional findings, and these findings alone are consistent with unskilled work. *Id.* at 16. Therefore, Defendant argues that usage of the Medical-Vocational Guidelines was appropriate. *Id.* at 16.

Dr. Kupstas' report indicates that Plaintiff "is able to perform [activities of daily living] independently" and that her symptoms "due to a mental impairment are credible and [her] limitations [are] no more than moderate in [concentration, persistence, or pace.]" T. at 479. Plaintiff's restrictions, according to the ALJ, are consistent with this report. *See id.* at 21-22. Further, ALJ Ramos' reference to "simple tasks in a position with consistent job duties that [do] not require the claimant to supervise or manage the work of others" has been upheld by the Northern District on two earlier occasions because "[t]hese findings mirror the Ruling's parameters of mental capacity for unskilled sedentary work." *Id.* at 21-22*; see Miley v. Colvin*,

No. 3:13-cv-566, 2014 WL 4966144, *11 (N.D.N.Y. Sept. 30, 2014); *see also Bliss v. Colvin*, No. 3:13-cv-1086, 2015 WL 457643, *4 (N.D.N.Y. Feb. 3, 2015). While the ALJ approved Plaintiff for light work in the current case, non-exertional limitations are relevant to the skill level required, not exertional requirements. SSR 85-15 at 4. Therefore, although the ALJ limited Plaintiff to "unskilled light work[,]" the difference between sedentary jobs in *Miley* and *Colvin* and light jobs in the current case is not material to the Court's decision. T. at 26.

Based on the foregoing, the Court affirms the ALJ's decision to rely on the Medical-Vocational Guidelines to determine whether Plaintiff was disabled as defined by the Social Security Act.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's motion to remand for further administrative proceedings is **DENIED**; and the Court further

**ORDERS** that Defendant's motion for judgment on the pleadings is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment and close this case.

**IT IS SO ORDERED.**

Dated: March 26, 2015
      Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge